**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | | |
|---|---|---|
| **CONTINENTAL WESTERN INSURANCE COMPANY,** | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case 4:14-cv-00042-RP-RAW |
| **FEDERAL HOUSING FINANCE AGENCY,** *et al.,* | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

<u>**DEPARTMENT OF THE TREASURY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, TO TRANSFER OR STAY THE ACTION**</u>

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................... 1

Argument ...................................................................................................................... 2

I.  HERA Forecloses the Plaintiff's Attempt to Restrain the Actions of the Conservator ...... 2

    A.  Section 4617(f) Forbids Claims for Equitable Relief for Actions
       Taken by FHFA as the Conservator of the GSEs .......................................... 2

    B.  Section 4617(f) Forbids the Plaintiff's Attempt to Second-Guess
       FHFA's Exercise of its Conservatorship Authority ...................................... 5

    C.  Section 4617(f) Also Precludes Claims against the Conservator's
       Counter-Party, Treasury ............................................................................... 9

II.  The Plaintiff Cannot Bring Claims Based on Its Status as a Shareholder in the GSEs .... 12

    A.  The Plaintiff's Right to Bring This Suit Has Been Transferred to
       the Conservator for the Duration of the Conservatorship ........................... 13

         1.  HERA Bars Both Direct and Derivative Shareholder Claims ......................... 13

         2.  The Plaintiff's Claims Are Derivative ........................................................... 16

    B.  The Court Should Not Judicially Create an Exception to HERA's
       Explicit Transfer of All Shareholder Rights to the Conservator ................. 19

    C.  The Plaintiff's Claims Alleging a Right to a Liquidation
       Preference Are Not Ripe for Judicial Review ............................................. 22

    D.  The Plaintiff Lacks Shareholder Standing To Sue for Injuries to
       the GSEs ..................................................................................................... 23

III.  If This Action Is Not Dismissed, It Should Be Transferred or Stayed ........................... 24

    A.  Transfer is Appropriate Under the First-Filed Rule ................................... 24

    B.  Transfer is Appropriate Under 28 U.S.C. § 1404(a) ................................... 25

Conclusion .................................................................................................................. 25

i

# TABLE OF AUTHORITIES

**Cases:**                                                                                     **Page(s)**

*Agostino v. Hicks,*
    845 A.2d 1110 (Del. Ch. 2004) ............................................................... 17

*Am. Immigration Lawyers Ass'n v. Reno,*
    199 F.3d 1352 (D.C. Cir. 2000) ............................................................ 24

*Bank of America Nat. Ass'n v. Colonial Bank,*
    604 F.3d 1239 (11th Cir. 2010) ........................................................... 3, 9

*Big Lots Stores, Inc. v. Bain Capital Fund VII, LLC,*
    922 A.2d 1169 (Del. Ch. 2006) ............................................................. 18

*Bursik v. One Fourth St. N., Ltd.,*
    84 F.3d 1395 (11th Cir. 1996) ................................................................ 3

*City of Arlington v. FCC,*
    133 S. Ct. 1863 (2013) ............................................................................ 8

*Cnty. of Sonoma v. FHFA,*
    710 F.3d 987 (9th Cir. 2013), ............................................................. 3, 4

*Courtney v. Halleran,*
    485 F.3d at 949 ....................................................................................... 7

*Delta Savings Bank v. United States,*
    265 F.3d 1017 (9th Cir. 2001) ............................................................. 20

*Dittmer Properties, L.P. v. FDIC,*
    708 F.3d 1011 (8th Cir. 2013) ......................................................... 3, 8, 9

*Elgin v. Dep't of Treasury,*
    132 S. Ct. 2126 (2012) .......................................................................... 22

*Esther Sadowsky Testamentary Trust v. Syron,*
    639 F. Supp. 2d 347 (S.D.N.Y. 2009) ................................................. 14

*FAIC Sec. Inc. v. United States,*
    768 F.2d 352 (D.C. Cir. 1985) ............................................................. 23

*First Hartford Corp. Pension Plan & Trust v. United States*,
194 F.3d 1279 (Fed. Cir. 1999) ............................................................ 20

*Fogerty v. Fantasy Inc.*,
510 U.S. 517 (1994) ............................................................................ 15

*Franchise Tax Bd. of Cal. v. Alcan Aluminum Ltd.*,
493 U.S. 331 (1990) ............................................................................ 23

*Freeman v. FDIC*,
56 F.3d 1394 (D.C. Cir. 1995) ............................................................... 3

*Fund for Animals v. Kempthorne*,
472 F.3d 872 (D.C. Cir. 2006) ............................................................. 21

*Gail C. Sweeney Estate Marital Trust v. U.S. Treasury Dep't*,
--- F. Supp. 3d ---, 2014 WL 4661983 (D.D.C. Sept. 19, 2014) ..................................... *passim*

*Gentile v. Rossette*,
906 A.2d 91 (Del. 2006) ................................................................. 18, 19

*Gross v. Bell Sav. Bank*,
974 F.2d 403 (3d Cir. 1992) ............................................................... 3, 9

*Hindes v. FDIC*,
137 F.3d 148 (3d Cir. 1998) ................................................................ 10

*In re Fed. Home Loan Mortg. Corp. Derivative Litig.*,
643 F. Supp. 2d 790 (E.D. Va. 2009), *aff'd*, 434 F. App'x 188 (4th Cir. 2011) ...... 10, 13, 14, 20

*In re Fed. Nat'l Mortg. Ass'n Sec., Derivative & "ERISA" Litig.*,
629 F. Supp. 2d 1, 4 (D.D.C. 2009), *aff'd*, 674 F.3d 848 (D.C. Cir. 2012) ............................ 20

*In re J.P. Morgan Chase & Co. S'holder Litig.*,
906 A.2d 766 (Del. 2006) ................................................................ 17, 18

*Kellmer v. Raines*,
674 F.3d 848 (D.C. Cir. 2012) ......................................................... 12, 13, 21

*Kona Enters. v. Estate of Bishop*,
179 F.3d 767 (9th Cir. 1999) ............................................................... 23

*Kuriakose v. Fed. Home Loan Mortgage Corp.*,
674 F. Supp. 2d 483 (S.D.N.Y. 2009) ...................................................... 10

iii

*Leon Cnty. v. FHFA,*
   700 F.3d 1273 (11th Cir. 2012), ........................................................................... 3, 4

*Leon Cnty., Fla. v. FHFA,,*
   816 F. Supp. 2d 1205 (N.D. Fla. 2011) *aff'd*, 700 F.3d 1273 (11th Cir. 2012) ......................... 4

*LNV Corp. v. Outsource Serv. Mgmt., LLC,*
   2014 WL 834977  (D. Minn. Mar. 4, 2014) .......................................................... 10

*Maverick Tube, LP v. Westchester Surplus Lines,*
   Inc., 2007 WL 5115436 (E.D. Mo. Aug. 6, 2007) ................................................. 25

*May Dep't Stores Co. v. Wilansky,*
   900 F. Supp. 1154 (E.D. Mo. 1995) ................................................................. 25

*McCarthy v. Ozark Sch. Dist.,*
   359 F.3d 1029 (8th Cir. 2004) ....................................................................... 22

*Monsanto Tech. LLC v. Syngenta Crop Protection, Inc.,*
   212 F. Supp. 2d 1101 (E.D. Mo. 2002) ............................................................. 25

*Nat'l Trust for Historic Pres. v. FDIC,*
   21 F.3d 469 (D.C. Cir. 1994) ..................................................................... 3, 22

*Nat'l Trust for Historic Pres. . v. FDIC,*
   995 F.2d 238 (D.C. Cir. 1993), *aff'd and reinstated on reh'g,*
   21 F.3d 469 (D.C. Cir. 1994) ................................................................... 3, 6, 8

*Nw. Airlines v. Am. Airlines,*
   989 F.2d 1002 (8th Cir. 1993) ....................................................................... 24

*Pareto v. FDIC,*
   139 F.3d 696 (9th Cir. 1998) ....................................................................... 14

*Parsch v. Massey,*
   72 Va. Cir. 121 (2006) ............................................................................. 17

*Plaintiffs in All Winstar-Related Cases v. United States,*
   44 Fed. Cl. 3 (1999) ............................................................................... 15

*Potthoff v. Morin,*
   245 F.3d 710 (8th Cir. 2001) ....................................................................... 23

*Protas v. Cavanaugh*,
   2012 WL 1580969 (Del. Ch. 2012) ...................................................................... 19

*Rawoof v. Texor Petroleum Co.*,
   521 F.3d 750 (7th Cir. 2008) ............................................................................. 24

*Resolution Trust Corp. v. CedarMinn Bldg. Ltd. P'ship*,
   956 F.2d 1446 (8th Cir. 1992) ............................................................................. 7

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
   549 U.S. 422 (2007) ........................................................................................ 24

*Stommel v. LNV Corp.*,
   2014 WL 1340676 (D. Utah Apr. 4, 2014) ........................................................ 10

*Telematics Int'l, Inc. v. NEMLC Leasing Corp.*,
   967 F.2d 703 (1st Cir. 1992) ............................................................................. 10

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
   845 A.2d 1031 (Del. 2004) .......................................................................... 17, 18

*Town of Babylon v. FHFA*,
   699 F.3d 221 (2d Cir. 2012) .......................................................................... 3, 4

*Tri-State Hotels, Inc. v. FDIC*,
   79 F.3d 707 (8th Cir. 1996) .............................................................................. 5

*United States v. Cacioppo*,
   460 F.3d 1012 (8th Cir. 2006) .......................................................................... 12

*Villa v. Salazar*,
   933 F. Supp. 2d 50 (D.D.C. 2013) .................................................................... 25

*Volges v. Resolution Trust Corp.*,
   32 F.3d 50 (2d Cir. 1994) .............................................................................. 3, 8

*Ward v. Resolution Trust Corp.*,
   996 F.2d 99 (5th Cir. 1993) ........................................................................... 3, 9

*Zavanna, LLC v. RoDa Drilling Co.*,
   2009 WL 3720177 (D.N.D. 2009) ...................................................................... 24

**Statutes:**

5 U.S.C. § 701(a) ................................................................................................. 3

12 U.S.C. § 1821(c)(2) ......................................................................................... 6

12 U.S.C. § 4502(8)(A) ...................................................................................... 23

12 U.S.C. § 4617(a)(2) ......................................................................................... 6

12 U.S.C. § 4617(b)(2)(A) ........................................................................... *passim*

12 U.S.C. § 4617(b)(2)(D) ............................................................................. 5, 16

12 U.S.C. § 4617(b)(2)(G) ............................................................................... 5, 7

12 U.S.C. § 4617(b)(2)(K) ................................................................................ 15

12 U.S.C. § 4617(b)(3) ......................................................................................... 6

12 U.S.C. § 4617(c)(1) ....................................................................................... 15

12 U.S.C. § 4617(e)(1) ....................................................................................... 23

12 U.S.C. § 4617(e)(2) ....................................................................................... 22

12 U.S.C. § 4617(f) ...................................................................................... *passim*

12 U.S.C. § 4617(k) ........................................................................................... 22

28 U.S.C. § 1404(a) ..................................................................................... 24, 25

**Miscellaneous:**

Fed. R. Civ. P. 23.1(b)(1) .................................................................................. 23

**Introduction**

Providing further proof that no good deed goes unpunished, the plaintiff here seeks judicial relief as a result of the unparalleled actions by the Department of Treasury and the Federal Housing Finance Agency ("FHFA") to rescue and stabilize the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") (collectively, "the GSEs").   In September 2008, Treasury committed massive taxpayer funds to the GSEs, ultimately providing over $187 billion in taxpayer funds (and committing over $258 billion more) to ensure their solvency.   Without this capital infusion, both enterprises would have been placed in mandatory receivership.   Their failure and subsequent liquidation in receivership would have had dire consequences for mortgage markets and the larger economy.   Six years later, the GSEs have returned to a stable footing, thanks exclusively to the infusion of government capital since 2008, and the government's continuing commitment to infuse additional funds as necessary.   The plaintiff, a shareholder in the GSEs, brought this suit to demand a better deal for itself, at the expense of taxpayers.

This case must be dismissed on jurisdictional grounds.   First, it runs afoul of the jurisdictional barrier of the Housing and Economic Recovery Act of 2008 ("HERA"), 12 U.S.C. § 4617(f), which precludes courts from ordering equitable relief that would interfere with FHFA's exercise of its powers as conservator of the GSEs.   The plaintiff seeks to evade this jurisdictional bar by disputing whether FHFA properly exercised its conservatorship powers. But, under law that is well-established under HERA and a materially identical provision in the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), the jurisdictional barrier bar applies regardless of whether the plaintiffs agree with the manner in which FHFA has

1

exercised its conservatorship powers.   Nor may the plaintiff evade this barrier by suing FHFA's counter-party, Treasury.

In addition, this suit runs afoul of HERA's prohibition against shareholder suits, 12 U.S.C. § 4617(b)(2)(A)(i).   The plaintiff asserts that it may circumvent this bar by bringing a "direct" shareholder claim.   This argument is doubly misconceived.   The distinction between "direct" and "derivative" claims does not matter for the purposes of HERA, which bars shareholders from bringing any claim with respect to the assets of the GSEs.   In any event, the plaintiff's claims are plainly derivative, as its alleged injury depends on an injury that the GSEs (allegedly) suffered, and the relief that the plaintiff seeks would run only indirectly to it.   The plaintiff also invokes a "conflict of interest" exception to justify a suit against the conservator. That exception, however, appears nowhere in the text of HERA, and could make no sense in the context of a suit, like this one, in which a shareholder seeks to sue the conservator itself.

The plaintiff's suit also fails on additional threshold grounds, including a lack of ripeness, and the prudential barrier against shareholder suits in federal court.   If this action is not dismissed, it should be transferred to the District of Columbia, where numerous materially identical lawsuits are pending, including one filed by the plaintiff's corporate parent.

## Argument

## I.   HERA Forecloses the Plaintiff's Attempt to Restrain the Actions of the Conservator

### A.   Section 4617(f) Forbids Claims for Equitable Relief for Actions Taken by FHFA as the Conservator of the GSEs

HERA unequivocally provides that "no court may take any action to restrain or affect the exercise of powers or functions of [FHFA] as a conservator" of the GSEs.   12 U.S.C. § 4617(f). This section clearly bars review of FHFA's actions as conservator under the Administrative

Procedure Act ("APA").   *See* 5 U.S.C. § 701(a) (APA does not apply where "statutes preclude judicial review").   A unanimous body of precedent has applied this statutory language to bar claims, such as this one, that seek to second-guess a conservator's or a receiver's exercise of its statutory powers.   Many of those decisions were based on the jurisdictional provision of HERA.[1]   Other decisions reached the same result under the materially identical provision of FIRREA, the statute governing the FDIC's conservatorship and receivership powers.[2]   The application of the jurisdictional barrier to this case is straightforward.   The court "must first determine whether the challenged action is within the [conservator's] power or function; if so, it then determines whether the action requested would indeed 'restrain or affect' those powers." *Dittmer Properties, L.P. v. FDIC*, 708 F.3d 1011, 1017 (8th Cir. 2013).   This provision thus is a restriction on subject matter jurisdiction which "bar[s] a court from acting in virtually all circumstances."   *Nat'l Trust for Historic Pres. v. FDIC*, 21 F.3d 469, 472 (D.C. Cir. 1994) (Wald and Silberman, JJ., concurring).

These precedents confirm the existence of a "broad, but not infinite, conservator authority."   *Cnty. of Sonoma*, 710 F.3d at 994.   The plaintiff accuses FHFA and Treasury of seeking to "evade judicial scrutiny by merely labeling [their] actions with a conservator stamp."

---

[1]   *See, e.g.*, *Cnty. of Sonoma v. FHFA*, 710 F.3d 987, 993 (9th Cir. 2013) (holding that section 4617(f) barred APA claims against FHFA); *Leon Cnty. v. FHFA*, 700 F.3d 1273, 1278-79 (11th Cir. 2012) (holding that similar APA claim was barred by Section 4617(f)); *Town of Babylon v. FHFA*, 699 F.3d 221, 227 (2d Cir. 2012) (same).

[2]   *See, e.g.*, *Bank of Am. Nat. Ass'n v. Colonial Bank*, 604 F.3d 1239, 1243 (11th Cir. 2010); *Bursik v. One Fourth St. N., Ltd.*, 84 F.3d 1395, 1397 (11th Cir. 1996); *Freeman v. FDIC*, 56 F.3d 1394, 1399 (D.C. Cir. 1995); *Volges v. Resolution Trust Corp.*, 32 F.3d 50, 52 (2d Cir. 1994); *Ward v. Resolution Trust Corp.*, 996 F.2d 99, 103 (5th Cir. 1993); *Nat'l Trust for Historic Pres. v. FDIC*, 995 F.2d 238, 240 (D.C. Cir. 1993), *aff'd and reinstated on reh'g*, 21 F.3d 469 (D.C. Cir. 1994); *Gross v. Bell Sav. Bank*, 974 F.2d 403, 408 (3d Cir. 1992).

Opp. 25.   That is a straw man; neither Treasury nor FHFA has staked any claim to boundless authority.   The cases cited by the plaintiff, however, *confirm* that Section 4617(f) bars challenges to actions taken by FHFA in its capacity as a conservator, even though the statute would not bar, for example, a challenge to rules adopted by FHFA in its capacity as a regulator. *See Cnty. of Sonoma*, 710 F.3d at 994; *Leon Cnty.*, 700 F.3d at 1278.

In short, Section 4617(f) does not foreclose every lawsuit, but it does foreclose this one. The plaintiff's central allegation is that, in agreeing to the Third Amendment, FHFA used its authority with respect to the GSEs (two entities in conservatorship) in a manner inconsistent with the alleged purpose of conservatorship.   But where the conservator acts within one or more of its statutory powers, and with respect to an entity in conservatorship, a court has no jurisdiction to award equitable relief.   "The statute excludes judicial review of 'the exercise of powers or functions' given to the FHFA as a conservator.   A conclusion that the challenged acts were directed to an institution in conservatorship and within the powers given to the conservator ends the inquiry."   *Town of Babylon*, 699 F.3d at 228 (internal citation omitted).   A plaintiff may not evade Section 4617(f) by claiming that the conservator's actions were foolish, unnecessary, or ill-motivated, no matter how strenuously those allegations are made.   *See Cnty. of Sonoma*, 710 F.3d at 993 ("it is not our place to substitute our judgment for FHFA's"); *Leon Cnty., Fla. v. FHFA*, 816 F. Supp. 2d 1205, 1208 (N.D. Fla. 2011) *aff'd*, 700 F.3d 1273 (11th Cir. 2012) ("Congress surely knew, when it enacted § 4617(f), that challenges to agency action sometimes assert an improper motive.   But Congress barred judicial review of the conservator's actions without making an exception for actions said to be taken from an improper motive.").

**B.      Section 4617(f) Forbids the Plaintiff's Attempt to Second-Guess FHFA's Exercise of its Conservatorship Authority**

Nor may the plaintiff evade the jurisdictional barrier simply by alleging that FHFA and Treasury have acted at odds with what is (in the plaintiff's view) the proper purpose of a conservatorship.   So long as FHFA exercised a power within the scope of the authorities granted to it as the conservator, any claim for equitable relief is barred.   And the plaintiff's factual allegations are irrelevant to the question of the scope of the conservator's statutory authority, which is a purely legal question that this Court can and should resolve at the motion to dismiss stage.   *See Tri-State Hotels, Inc. v. FDIC*, 79 F.3d 707, 715 (8th Cir. 1996) (affirming the dismissal of claims for declaratory and equitable relief for lack of subject matter jurisdiction under FIRREA's jurisdictional bar).

FHFA, as the conservator of the GSEs, had the statutory authority to raise capital on their behalf, and this authority included the power to obtain an unprecedented level of taxpayer support from Treasury through the PSPAs and the amendments thereto.   *See* 12 U.S.C. § 4617(b)(2)(D) (empowering FHFA as conservator to "carry on the business" of the GSEs and "put the [GSEs] in a sound and solvent condition."); *see also Gail C. Sweeney Estate Marital Trust v. U.S. Treasury Dep't*, --- F. Supp. 3d ---, 2014 WL 4661983, at *9 (D.D.C. Sept. 19, 2014) (holding that a court may not review "the type[s] of business decisions Congress entrusted to the Conservator in HERA").   In addition, FHFA had the power to transfer dividends to Treasury to compensate the taxpayers for their investment in the GSEs, given the express authorization to the conservator to "transfer or sell any asset" of the GSEs "without any approval, assignment, or consent."   12 U.S.C. § 4617(b)(2)(G).   FHFA exercised its powers to

reasonably determine that the Third Amendment would preserve the availability of funds to cover future net worth deficits, by ensuring that the GSEs would never have to take a draw from Treasury in order to pay a dividend back to Treasury.    Under HERA, the conservator is charged with deciding how to carry on the business of the GSEs, free from "outside second-guessing" like that offered by the plaintiff here.    *Nat'l Trust for Historic Pres.*, 995 F.2d at 240.

The plaintiff offers a belabored argument that FHFA did not exercise its conservatorship powers when it entered into the Third Amendment.    It contends, wrongly, that the statute forbids FHFA as the conservator from "winding up" *any* of the GSEs' operations.    That is, the plaintiff contends that HERA required FHFA to reconstitute the GSEs back into precisely the unsound, unsafe structure that led to conservatorship in the first place.    *See* Opp. 34-39.    But the statute permits the appointment of FHFA as "conservator *or* receiver for the purpose of reorganizing, rehabilitating, *or* winding up the affairs of a regulated entity."    12 U.S.C. § 4617(a)(2) (emphasis added).    In a single sentence, Section 4617(a)(2) states that an appointment as "conservator or receiver" may be for the purpose of "reorganizing, rehabilitating, or winding up" the operations of the GSEs, without distinguishing between conservatorship and receivership.    Congress knew how to draw a distinction between conservatorship and receivership where it meant to do so.    *Compare* 12 U.S.C. § 4617(b)(2)(A) (listing general powers of FHFA "as conservator or receiver") *with* 12 U.S.C. § 4617(b)(3) (granting FHFA the authority "as receiver, [to] determine claims in accordance with the requirements of this subsection").[3]

---

[3]  Tellingly, FIRREA permits the appointment of the FDIC as receiver "for the purpose of liquidation or winding up the affairs of an insured Federal depository institution," without

In any event, the dispute over FHFA's "winding up" authority is immaterial. The plaintiff does not dispute that HERA also gives FHFA the authority as conservator to "transfer or sell any asset or liability of the regulated entity in default, and may do so without any approval, assignment, or consent with respect to such transfer or sale." 12 U.S.C. § 4617(b)(2)(G). The plaintiff's only argument is that this otherwise unambiguous grant of authority must be implicitly conditioned by "statutory goals"; it argues that "FHFA lacks the authority to 'transfer assets' to *prevent*, rather than to *promote*, rehabilitation of the Companies." Opp. 48 (emphasis in original). But the plaintiff cites no case permitting a challenge to a conservator's or a receiver's transfer of assets, based simply on the allegation that the transfer (allegedly) conflicted with a broader statutory purpose. That proposition is inconsistent both with Section 4617(f), and the unambiguous language of the asset transfer provision, which states that FHFA's authority does not require "*any* approval, assignment, or consent with respect to such transfer or sale." 12 U.S.C. § 4617(b)(2)(G) (emphasis added). The plaintiff cannot qualify Congress's express grant of asset-transfer authority to the conservator by "reading language into [the statute] that is not there …." *Courtney v. Halleran*, 485 F.3d at 949 (rejecting argument that FIRREA's grant of authority to receiver to transfer assets was implicitly conditioned by the statute's priority

---

explicitly listing a similar purpose for the FDIC as conservator. 12 U.S.C. § 1821(c)(2)(A)(ii). In HERA, however, Congress listed "winding up" as a purpose of appointment for either a conservator or a receiver. The plaintiff may not ask this Court to re-write the statute to separate the purposes of conservatorship and receivership where Congress determined it was not necessary to do so. *See Resolution Trust Corp. v. CedarMinn Bldg. Ltd. P'ship*, 956 F.2d 1446, 1451-52 (8th Cir. 1992) ("Throughout FIRREA, Congress specifically articulated when the Corporation was to exercise a duty, right, or power in its capacity as a 'conservator or receiver.' In each instance, it is clear that Congress intended the duty, right, or power to be enjoyed or exercised by both the conservator and the receiver. … More instructive, however, is the care Congress took to delineate those duties, rights, and powers the Corporation could pursue only in its capacity as receiver, or only in its capacity as conservator, but not both.").

distribution scheme).

Despite the express preclusion of judicial review in 12 U.S.C. § 4617(f), the plaintiff reasons that it may proceed with its claim that Treasury and FHFA acted "arbitrarily and capriciously" under the APA, because the APA is a "background" principle of law to which Section 4617(f) purportedly cannot apply.   Opp. 29.[4]   This argument fails in the face of § 4617(f).   Every provision of law, whether it is contract law, *see Volges*, 32 F.3d at 53, property and agency law, *see Dittmer Properties,* 708 F.3d at 1015, or a specific statute such as the National Historic Preservation Act, *see Nat'l Trust for Historic Pres.*, 995 F.2d at 240, is a background principle of law that sets limits on what a federal agency, or indeed any person, may do in the ordinary course of affairs.   Section 4617(f), however, forbids any equitable relief that would restrain or affect the powers and functions of the conservator, even in cases where the plaintiff alleges some violation of law.

The plaintiff cannot avoid the clear consequence of § 4617(f) by arguing that FHFA and Treasury have misused their authority.   In so arguing, the plaintiff "fails (or refuses) to recognize the difference between the exercise of a function or power that is clearly outside the statutory authority of the RTC on the one hand, and improperly or even unlawfully exercising a

---

[4]   The plaintiff cites *City of Arlington v. FCC*, 133 S. Ct. 1863, 1869 (2013), for the proposition that "when [agencies] act improperly, no less than when they act beyond their jurisdiction, what they do is *ultra vires*."   Opp. 25-26.   From this passage, the plaintiff intuits that it must be able to bring a claim that the defendant agencies acted arbitrarily and capriciously, even in the face of express statutory language precluding that claim.   The quoted passage, however, dealt with the scope of *Chevron* review in APA cases.   *City of Arlington*, 133 S. Ct. at 1868.   It had nothing to do with statutes, such as Section 4617(f), that limit APA review altogether.   The question of the deference due an agency's decision on the merits is distinct from the question of whether a Court can review the decision at all.   *City of Arlington* is thus of no relevance here.

function or power that is clearly authorized by statute on the other."   *Ward*, 996 F.2d at 103.[5]

*See also Bank of America*, 604 F.3d at 1244 (the "fear that the FDIC will make an erroneous

determination of ownership is immaterial to our analysis because it is merely a fear of the

FDIC's improper performance of its legitimate receivership functions"); *Gross*, 974 F.2d at 408

("the availability of injunctive relief does not hinge on our view of the proper exercise of

otherwise-legitimate powers").   Rather than permitting a review of the wisdom of FHFA's

actions, the "jurisdictional inquiry" here is "quite narrow."   *Bank of America*, 604 F.3d at 1243.

### C.     Section 4617(f) Also Precludes Claims against the Conservator's Counter-Party, Treasury

Nor may the plaintiff evade the jurisdictional limit of § 4617(f) by switching its target

from the conservator to Treasury.   It tries to repackage its initial claim – that the Third

Amendment, by changing the dividend structure of the PSPAs, amounted to the conservator's

"giveaway" of assets to Treasury for "virtually nothing," Opp. 48 – into the contradictory

assertion that the Third Amendment is somehow a "purchase" of securities by Treasury, Opp. 56.

The Eighth Circuit, like numerous other courts, has squarely held that the jurisdictional

withdrawal of HERA and FIRREA forbids courts from granting equitable relief directed at

counter-parties, as such relief would simply provide a plaintiff with another method to restrain

the conservator.   *See Dittmer Properties*, 708 F.3d at 1017-18; *see also Gail C. Sweeney Estate*

*Marital Trust*, 2014 WL 4661983, at *9 ("a court action can 'affect' a conservator even if the

---

[5]   The plaintiff accuses Treasury of "ascribing to *Ward* the view that a federal court is impotent to enjoin a conservator or receiver from violating the very statute from which its authority is derived …."   Opp. 27.   Treasury cited *Ward* for a different, and unassailable, proposition.   A plaintiff cannot avoid Section 4617(f) by alleging that the conservator has improperly exercised its statutory authority.   An unbroken line of authority confirms this point.

litigation is not directly aimed at the conservator itself") (internal quotation and alterations omitted).    The plaintiff tries to avoid this binding Eighth Circuit precedent by arguing, implausibly, that *Dittmer* and related precedents apply only to "efforts to enforce the legal obligations of a *federal receiver or conservator or its charge* through an injunction against a third party."    Opp. 53 (italics in original).    This makes no sense.    Any relief directed at the conservator's counter-party is also relief designed to force the third party to honor its "ordinary, independent legal obligations," Opp. 54.    Nor did the Eighth Circuit in *Dittmer* employ the test that the plaintiff invents.    Instead, the court followed the statutory language, and asked simply "whether the challenged action is within the receiver's power or function," and "whether the challenged action would indeed 'restrain or affect' the FDIC's receivership powers."    *Id*. at 1017.[6]    Answering both questions in the affirmative, the Eighth Circuit barred the suit against the FDIC's counter-party.    The same result follows here.

The plaintiff cites only to two inapposite cases as support for its claim that it may seek to

---

[6]  *See also Telematics Int'l, Inc. v. NEMLC Leasing Corp.*, 967 F.2d 703, 707 (1st Cir. 1992) ("Permitting Telematics to attach the certificate of deposit, if that attachment were effective against the FDIC, would have the same effect, from the FDIC's perspective, as directly enjoining the FDIC from attaching the asset.    In either event, the district court would restrain or affect the FDIC in the exercise of its powers as receiver."); *Hindes v. FDIC*, 137 F.3d 148, 160 (3d Cir. 1998) ("the statute, by its terms, can preclude relief even against a third party, including the FDIC in its corporate capacity, where the result is such that the relief 'restrain[s] or affect[s] the exercise of powers or functions of the [FDIC] as a conservator or a receiver.'") (alterations in original); *Kuriakose v. Fed. Home Loan Mortgage Corp.*, 674 F. Supp. 2d 483, 494 (S.D.N.Y. 2009) ("By moving to declare unenforceable the non-participation clause in Freddie Mac severance agreements, in essence Plaintiffs are seeking an order which restrains the FHFA from enforcing this contractual provision in the future ….    HERA clearly provides that this Court does not have the jurisdiction to interfere with such authority."); *In re Fed. Home Loan Mortgage Corp. Derivative Litig.* ("*In re Freddie Mac*"), 643 F. Supp. 2d 790, 799 (E.D. Va. 2009), *aff'd sub nom. La. Mun. Police Employees Ret. Sys. v. FHFA*, 434 F. App'x 188 (4th Cir. 2011) ("A court action can 'affect' a conservator even if, as in the cases at bar, the litigation is not directly aimed at the conservator itself.").

"restrain or affect the exercise of powers or functions of [FHFA] as a conservator" of the GSEs by suing FHFA indirectly through its counter-party, despite the express language of 12 U.S.C. § 4617(f).   Opp. 54.   But in one case, the court held that the jurisdictional provision did not apply where the lawsuit "focus[ed] on [the third-party's] actions not the actions of the FDIC," and relief "would [not] have a chilling effect on the FDIC's ability to transfer bundles of trust deeds to third parties."   *Stommel v. LNV Corp.*, 2014 WL 1340676 (D. Utah Apr. 4, 2014).   In the other case, the plaintiff had sought a recovery only against the third party, and the court held that relief "would not 'restrain or affect' [the FDIC as receiver] in any way."   *LNV Corp. v. Outsource Serv. Mgmt., LLC*, 2014 WL 834977 at *4 (D. Minn. Mar. 4, 2014).

The contrast with the present case is obvious.   The plaintiff seeks to revise the key agreement that ensured the solvency of the GSEs after the 2008 financial crisis.   The plaintiff seeks similar relief with respect to FHFA and Treasury – namely, rewriting that agreement to retain certain features that the plaintiff likes (the unprecedented and continuing commitment of taxpayer funds to the GSEs) but invalidating certain features that it dislikes (the variable dividend payments of the Third Amendment, the obligation to repay taxpayer funds advanced after December 31, 2009 but committed before that date).   Relief that sets aside a contract entered into by the conservator with respect to the entities in conservatorship is certainly relief that would "restrain or affect" the conservator, and consequently that relief is barred under 12 U.S.C. § 4617(f).   *See Gail C. Sweeney Marital Trust*, 2014 WL 4661983, at *9.[7]

---

[7]   The plaintiff cites to HERA's legislative history, from which it draws the inference that Congress would not have intended any limits on judicial review of its claim that Treasury exceeded its purchase authority.   Opp. 56.   HERA's jurisdictional barrier, however, is unambiguous: "no court may take any action to restrain or affect the exercise of powers or

**II.      The Plaintiff Cannot Bring Claims Based on Its Status as a Shareholder in the GSEs**

The plaintiff's suit also fails under a second, independent bar in HERA, which prohibits suits by shareholders of the GSEs during conservatorship.   FHFA, as the conservator of the GSEs, has succeeded to all of the rights of the GSEs' shareholders for the duration of the conservatorship, including the right to bring any lawsuit predicated on a plaintiff's status as a shareholder of one or both of those entities.   *See* 12 U.S.C. § 4617(b)(2)(A) (FHFA "shall, as conservator or receiver, and by operation of law, immediately succeed to … all rights, titles, powers, and privileges of the regulated entity, and of any stockholder, officer, or director of such regulated entity with respect to the regulated entity and the assets of the regulated entity").   This language "plainly transfers shareholders' ability to bring derivative suits – a 'right[], title[], power[], [or] privilege[]' – to FHFA."   *Kellmer v. Raines*, 674 F.3d 848, 850 (D.C. Cir. 2012) (alterations in original).   This statutory provision thus "bars shareholder derivative actions," *id.*, because Congress took care to "transfer[] everything it could to the conservator," *id.* at 851.

Section 4617(b)(2)(A) mandates the dismissal of this claim.   The plaintiff advances two arguments in an effort to avoid this result.   First, it argues that it has raised a direct claim, rather than a derivative claim.   This argument fails, because the plain language of Section 4617(b)(2)(A) applies to direct claims and derivative claims equally.   The power to bring either kind of suit is one of the "rights, titles, powers, or privileges" of a shareholder "with respect to the assets" of the GSEs, and that power rests with the conservator for the duration of the conservatorship.   And in

---

functions of the Agency as a conservator or a receiver."   12 U.S.C. § 4617(f).   The legislative history that the plaintiff cites says nothing to contradict the express statutory text.   Nor would it matter even if it did, as resort to legislative history is unnecessary where the language of the statute is clear.   *See, e.g.*, *United States v. Cacioppo*, 460 F.3d 1012, 1018 (8th Cir. 2006).

any event, the claim that the plaintiff advances here is derivative, not direct.   Second, the plaintiff

asks this Court to judicially create an exception to the plain meaning of the statute for actions

where the conservator purportedly faces a conflict of interest.   The exception that the plaintiff

proposes would swallow the statutory rule, and should be rejected.   This Court should instead

follow the plain language of Section 4617(b)(2)(A), and dismiss this suit.

### A.    The Plaintiff's Right to Bring This Suit Has Been Transferred to the Conservator for the Duration of the Conservatorship

#### 1.    HERA Bars Both Direct and Derivative Shareholder Claims

"[T]he plain meaning of [Section 4617(b)(2)(A)] is that *all* rights previously held by [the

GSEs'] stockholders, including the right to sue derivatively, now belong exclusively to the

FHFA."   *In re Freddie Mac*"), 643 F. Supp. 2d at 795 (E.D. Va. 2009) (emphasis in original).

The plaintiff contends, however, that the statute transferred only some shareholder rights to FHFA,

and has preserved a shareholder's right to bring a direct claim, if not a derivative claim.   Opp. 57.

Its premise is incorrect; its claim is derivative, as will be explained below.   But no matter how the

plaintiff characterizes its claim, it may not proceed with that claim now, while the

conservatorships remain in effect.   A plaintiff's ability to bring any action with respect to the

assets of the GSEs, whether the action is called direct or derivative, is one of the "rights, titles,

powers, or privileges" of shareholders that was transferred to FHFA upon its appointment as

conservator.   12 U.S.C. § 4617(b)(2)(A)(i).[8]

Contrary to the plaintiff's characterization, the D.C. Circuit in *Kellmer* did not hold that

---

[8]   Indeed, because derivative actions by shareholders are already prohibited under the shareholder standing rule, *see* pp. 23-24, *infra*, it would have made little sense for Congress to enact a jurisdictional bar that merely restated the pre-existing limits on shareholder standing.

HERA's transfer of all rights to the conservator silently carved out an exception for direct claims. Rather, that court held that, because "a shareholder's ability to sue derivatively … is fairly described as a 'right[]' or 'power[]' of owning stock," it transferred to FHFA upon its appointment as conservator.   *Kellmer*, 674 F.3d at 851; *see Gail C. Sweeney Marital Trust*, 2014 WL 4661983, at *3.   The court recognized that Congress intended HERA's transfer of rights to the conservator to be all-encompassing, for the duration of the conservatorship.   "'Congress also included privileges just to be sure that nothing was missed.   Congress has transferred everything it could to the conservator, and that includes a stockholder's right, power, or privilege to demand corporate action or to sue directors or others when action is not forthcoming.'"   *Kellmer*, 674 F.3d at 851 (quoting *Pareto v. FDIC*, 139 F.3d 696, 700 (9th Cir. 1998)) (internal alterations omitted).[9] Congress's transfer of "everything it could to the conservator" included the right to bring any shareholder suit with respect to the GSEs' assets, no matter how that suit is labeled.

The plaintiff cites only a single case to support its theory that it may bring a direct claim, in defiance of the express statutory language transferring all shareholder rights to the conservator for the duration of the conservatorship.   Opp. 58.   But that case addressed shareholder claims concerning companies that were in liquidation.   "The critical factor here is that the corporation, the thrift, has been or will be liquidated.   Here, the shareholders of each failed thrift will be solely entitled to any surplus remaining after the thrift's creditors and the expenses of administration have been paid.   Thus, the shareholders have a direct, vested interest in such excess portion of any

---

[9]   *See also In re Freddie Mac*, 643 F. Supp. 2d at 797 (HERA "clearly demonstrates Congressional intent to transfer as much control of [the GSEs] as possible to the FHFA …."); *Esther Sadowsky Testamentary Trust v. Syron*, 639 F. Supp. 2d 347, 350 (S.D.N.Y. 2009) ("under the plain language of HERA, 'all rights, titles, powers, and privileges' of Freddie Mac's shareholders are now vested in the FHFA").

recovery." *Plaintiffs in All Winstar-Related Cases v. United States*, 44 Fed. Cl. 3, 10 (1999). The court's "holding … is limited to the liquidation context in which any surplus, as a matter of law, must be distributed to the shareholders." *Id*. at 11-12. By its own terms, then, *Winstar* does not permit a claim outside of a liquidation proceeding.[10]

HERA likewise forbids claims outside of liquidation. As the plaintiff itself notes, Opp. 59, the statute establishes procedures for a shareholder to submit a claim for payment, if a GSE is liquidated. *See* 12 U.S.C. § 4617(c)(1)(D). Thus, claims regarding a "right to payment, resolution, or other satisfaction of their claims" can be presented only in receivership, and only then if the claims have been properly exhausted under the claims administration process. *See* 12 U.S.C. § 4617(b)(2)(K)(i). Congress also expressly provided that such claims shall be subject to the priority-of-claims and maximum-liability provisions of HERA. *See id*. ("right to payment, resolution, or other satisfaction of their claims, as permitted under subsections (b)(9), (c), and (e)."). Thus, under Section 4671(f), Congress transferred all shareholder rights, including the right to bring suit, to the conservator for the duration of the conservatorship, and it left the resolution of any shareholder claims to the administrative claims process that would arise if the entities were to go into receivership. By bringing an action concerning their liquidation preferences now, during the conservatorship, at a time when all "rights, titles, powers, and privileges" of shareholders are held by FHFA, the plaintiff simply ignores the process that Congress established to determine its claims in the event of liquidation.

---

[10] It is puzzling that the plaintiff claims, on the basis of this single, inapposite case, that "Congress is presumed" to have provided for transfer of only *some* shareholder rights, in light of the express language in HERA that expressly provides for the transfer of *all* of those rights to the conservator. Opp. 58. *See Fogerty v. Fantasy Inc.*, 510 U.S. 517, 532 (1994) (one, off-point case presents "hardly the sort of uniform construction that Congress might have endorsed").

The plaintiff asserts that FHFA must be "improperly paying dividends to Treasury because those dividend rights belong to *FHFA*, not Treasury" under 12 U.S.C. § 4617(b)(2)(A).   Opp. 60 (emphasis in original).   The plaintiff ignores that FHFA and Treasury entered into the Preferred Stock Purchase Agreements *after* the GSEs were placed into conservatorship.   Compl., ¶¶ 35, 41. HERA authorized the conservator to "take such action as may be … necessary to put the regulated entity in a sound and solvent condition."   12 U.S.C. § 4617(b)(2)(D).   FHFA, as the conservator, determined, reasonably enough, in September 2008 that Treasury's commitment of hundreds of billions of dollars in capital to the GSEs, in exchange for dividend rights and other economic benefits, would assist the conservator in its efforts to restore the GSEs to solvency.[11]   Since, under HERA, the conservator "immediately succeed[ed]" to all rights of shareholders for the shares in existence at the time that the conservatorship was created, 12 U.S.C. § 4617(b)(2)(A), FHFA had the authority to enter into the PSPAs and to confer dividend rights on Treasury in exchange for Treasury's extraordinary commitment of capital.

## 2.   The Plaintiff's Claims Are Derivative

In any event, if the distinction matters for the purposes of HERA (and it does not), the claims that the plaintiff seeks to assert here are derivative, not direct.   To distinguish between a

---

[11]   The plaintiff also argues that FHFA somehow has acknowledged that shareholders retain rights to payment, and that those rights may be exercised during the conservatorship, by "expressly suspend[ing] payment of dividends to private shareholders of Fannie and Freddie during conservatorship."   Opp. 59.   As the plaintiff puts it, FHFA would have paid any dividends to itself as the successor to the shareholders' rights during conservatorship, and thus there would have been no need for any public announcement as to the fate of those dividends. This argument is difficult to comprehend.   FHFA's suspension of dividends was entirely consistent with the statutory provision that transferred all of a shareholder's rights to the conservator, for as long as the conservatorship remained in effect.   And it made eminent sense for FHFA to announce the suspension of dividends, so that shareholders, creditor, and the public at large would be informed of the financial status of the GSEs during the conservatorship.

16

derivative and direct claim, "a court should look to the nature of the wrong and to whom the relief should go.   The stockholder's claimed direct injury must be independent of any alleged injury to the corporation.   The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail *without showing an injury to the corporation*."   *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004) (emphasis added).[12]

The plaintiff cannot prevail on its claims "without showing an injury to the corporation." *Id.* at 1039.   At heart, it alleges that Treasury's and FHFA's actions, including their entry into the Third Amendment to the PSPAs, have resulted in a waste of corporate assets.   *See, e.g.*, Compl. ¶ 19 ("Every day that passes … results in potential diminution of the value of the Companies and harm to the private owners of their residual interests.").   Thus, the plaintiff contends (wrongly), FHFA has violated a duty owed to the GSEs themselves, a duty to take action to restore those entities to a "sound and solvent condition."   *E.g.*, Compl., ¶ 99.   Because the harm that the plaintiff alleges is "dependent on a prior injury to the corporation," its claim is derivative. *Agostino v. Hicks*, 845 A.2d 1110, 1122 (Del. Ch. 2004); *see also In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 766, 771 (Del. 2006) ("claims of waste are classically derivative").

Moreover, the relief that the plaintiff seeks plainly is relief that would inure to the (alleged) benefit of the GSEs themselves, and only indirectly to the plaintiff.   The plaintiff asks the Court to "set[] aside" the Third Amendment to the PSPAs, to direct Treasury to return dividend payments to the GSEs, and to order a reduction in the liquidation preference of the preferred stock held by Treasury, that is, to reduce the amount of the potential claim that Treasury has against the assets of the GSEs.   Compl., pp. 54-55 (prayer for relief).   Because the corporations "would receive the

---

[12]   Virginia law is to the same effect.   *See Parsch v. Massey*, 72 Va. Cir. 121, 128 (2006).

benefit" of these remedies, *Tooley*, 845 A.2d at 1033, the claims are derivative for this reason as well.   *See Big Lots Stores, Inc. v. Bain Capital Fund VII, LLC*, 922 A.2d 1169, 1179 (Del. Ch. 2006) (claim is direct, rather than derivative, only where "no relief flows to the corporation").

The plaintiff nonetheless asserts that its claim is direct "because the [Third Amendment] destroyed the value of [the plaintiff's] investments through the transfer of the entities' entire net worth to a single, dominant shareholder."   Opp. 61.   This argument hinges on the "special injury" rule, which the Delaware Supreme Court has rejected as "not helpful to a proper analytical distinction between derivative and direct actions."   *Tooley*, 845 A.2d at 1035.   A mere assertion that the depletion of corporate assets – again, a "classically derivative" injury, *see In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d at 771 – could eventually affect the payment of a liquidation preference to that shareholder does not transform the claim from derivative to direct.

The plaintiff also relies on *Gentile v. Rossette*, 906 A.2d 91 (Del. 2006), for the proposition that its challenge to an alleged "improper[] allocat[ion]" of corporate profits to one class of shareholders qualifies as both a direct and a derivative claim.   Opp. 61.   *Gentile* discussed the possibility of a shareholder's assertion of an injury separate from a corporate injury, where the corporation has issued excess shares to a majority shareholder, without receiving commensurate value in return, and where "the shares representing the 'overpayment' embody both economic value and voting power …."   906 A.2d at 95-96.   In such a case, "[a] separate harm also results: an extraction from the public shareholders, and redistribution to the controlling shareholder, of a portion of the economic value and voting power embodied in the minority interest."   *Id.*   The Third Amendment was not such a transaction, however.   Treasury is not a majority shareholder of the GSEs.   Moreover, the alleged "overpayment" of dividends on Treasury's senior preferred

stock is in the form of cash, not additional stock.[13]

Nor did the Third Amendment have any effect on any shareholder's "voting power." Treasury does not hold voting rights, and other shareholders' voting tights were suspended on day one of the conservatorship, before the PSPAs (let alone the Third Amendment) were entered into. Nor did the Third Amendment affect the "economic value" of the plaintiff's shares. Dividend payments had been suspended since the conservatorships began, and the plaintiff's liquidation preference (in the event of receivership) was fixed by HERA's maximum liability provision. The plaintiff's claim thus depends upon an assertion of alleged wrongdoing that "deplete[d] corporate assets that might otherwise be used to benefit the stockholders, such as through a dividend," and its claim is derivative. *Protas v. Cavanaugh*, 2012 WL 1580969, at \*6 (Del. Ch. 2012).

### B.   The Court Should Not Judicially Create an Exception to HERA's Explicit Transfer of All Shareholder Rights to the Conservator

The plaintiff's claim thus fails under the plain language of 12 U.S.C. § 4617(b)(2)(A). It asks this Court, however, to depart from the statute's text to create a judicial exception that would permit shareholder suits alleging a "manifest conflict of interest" on the part of the conservator. Opp. 64. This Court is not free to judicially create such an exception where Congress did not see fit to do so. "HERA's plain language provides, in a broad stroke, that the FHFA succeeds to 'all rights, titles, powers, and privileges' of the stockholders of Fannie Mae …. This directive implies no exception, and plaintiffs[] fail to identify any accompanying statutory text to persuade this

---

[13]  The plaintiff acknowledges that the narrow *Gentile* exception is limited to circumstances in which a corporation has issued excessive stock to a majority shareholder, and does not extend to claims of excessive distributions of cash dividends. Opp. 61 n.15 (citing *Gentile*, 906 A.2d at 100 n.21). It asserts that it fits within this narrow exception, however, because, as it puts it, its stock was effectively transferred to Treasury. No such transfer occurred here; the plaintiff remains in possession of its stock.

19

Court that, when read as a whole, HERA carved out or otherwise permits the exception they propound." *In re Fed. Nat'l Mortg. Ass'n Sec., Derivative & "ERISA" Litig.* ("*In re Fannie Mae*"), 629 F. Supp. 2d 1, 4 (D.D.C. 2009), *aff'd sub nom. Kellmer v. Raines*, 674 F.3d 848 (D.C. Cir. 2012).  *See also In re Freddie Mac*, 643 F. Supp. 2d at 797 ("the broad, sweeping language of HERA … clearly demonstrates Congressional intent to transfer as much control of Freddie Mac as possible to the FHFA, including any right to sue on behalf of the corporation."); *Gail C. Sweeney Estate Marital Trust*, 2014 WL 4661983, at *3 ("the plain language of HERA provides that only the Conservator may bring suit on behalf of Fannie Mae").

Nevertheless, the plaintiff urges the Court to adopt a version of the "manifest conflict of interest" exception described in two cases arising under FIRREA.  *See Delta Savings Bank v. United States*, 265 F.3d 1017 (9th Cir. 2001); *First Hartford Corp. Pension Plan & Trust v. United States*, 194 F.3d 1279 (Fed. Cir. 1999).   But both of those cases concerned derivative suits over *pre-receivership* claims against federal agencies.   Neither case supports the proposition that shareholders can bring suit against the conservator itself, or the counter-party to a conservatorship action, based on conduct that occurred after the conservatorship began.

If a "conflict of interest" exception could be judicially grafted on to the language of HERA, and then judicially extended to apply to suits that challenge the actions of the conservator itself, the exception would swallow the rule that forbids shareholder suits in the first place.   A derivative action, after all, arises only where the shareholder alleges that the corporate directors have violated a duty of care to the corporation.   A reading of HERA that bars shareholders from suing derivatively, but that also permits an exception whenever the conservator declines to sue itself or its counter-party, would eviscerate the text of Section 4617(b)(2)(A)(i).   Under the plaintiff's

theory, the statute could be evaded as a simple matter of pleading.   For example, a claim against the former directors and officers of the GSEs over alleged accounting irregularities could not, under 12 U.S.C. § 4617(b)(2)(A)(i), be maintained as a derivative action.   *See Kellmer*, 674 F.3d at 850.   However, the plaintiff need only add a claim that FHFA is improperly exercising its conservatorship power by not pursuing such a claim, and suddenly, an adequate derivative action has been pled, under the plaintiff's theory.   Such a result is inconsistent with the limitations on review that Congress created in HERA.[14]   There is no basis, then, for the plaintiff to ask this Court to judicially create a "conflict of interest" exception that Congress did not see fit to include in the statute.   *See Kellmer*, 674 F.3d at 850 ("to resolve this issue, we need only heed Professor Frankfurter's timeless advice: '(1) Read the statute; (2) read the statute; (3) read the statute!'").

The plaintiff argues that HERA must not be read literally, because the statute's express prohibition of shareholder claims might prevent "meaningful judicial review" of "constitutional claims."   Opp. 65.   But no constitutional claims have been raised here, and thus there is no need to consider the extent to which Section 4617(b)(2)(A) might bar review of a constitutional challenge.   In any event, the plaintiff misapprehends the effect of Section 4617(b)(2)(A); the statute does not permanently prohibit a shareholder plaintiff from ever bringing a claim.   Instead, as noted above, it simply provides that the right to bring such a claim is transferred to the conservator, while the conservatorship lasts.   *See Nat'l Trust for Historic Pres. v. FDIC*, 21 F.3d

---

[14]   The plaintiff argues that its invented exception to § 4617(b)(2)(A) would "not allow shareholders to bring *any* derivative action during a conservatorship," Opp. 65 n.18 (emphasis in original), because some shareholders might lack standing.   But the bar on shareholder suits would be meaningless if it only barred plaintiffs who would lack standing anyway.   *See Fund for Animals v. Kempthorne*, 472 F.3d 872, 876 (D.C. Cir. 2006) ("courts presume that Congress has used its scarce legislative time to enact statutes that have some legal consequence").

at 472 (Wald and Silberman, JJ., concurring).   The statute's simple deferral of review of the plaintiff's claim would raise no constitutional concerns, even if any constitutional claim had been raised here.   *See Elgin v. Dep't of Treasury*, 132 S. Ct. 2126, 2132 (2012).

## C.   The Plaintiff's Claims Alleging a Right to a Liquidation Preference are Not Ripe for Judicial Review

For similar reasons, the plaintiff's claims are not ripe for review now.   At bottom, the plaintiff asserts that setting aside the Third Amendment would improve its potential recovery in the event of the GSEs' liquidation.   But neither GSE is in liquidation, nor headed for immediate liquidation (a result of Treasury's unprecedented commitment and provision of funds to the GSEs).   The plaintiff thus asks the Court to adjudicate a potential claim concerning its liquidation preference now, when the claim is purely abstract, rather than at the time and in the forum that Congress specified – a liquidation proceeding under 12 U.S.C. § 4617(k).   This Court should defer review until that claim ripens.   *See, e.g.*, *McCarthy v. Ozark Sch. Dist.*, 359 F.3d 1029, 1037 (8th Cir. 2004).   The hypothetical nature of this claim is all the more clear in light of the limits that HERA places on the plaintiff's recovery in such a liquidation proceeding.   HERA fixes the receiver's maximum liability at the amount that a shareholder would have received had the GSEs gone into immediate liquidation at the time of statutory default in September 2008.   12 U.S.C. § 4617(e)(2).   In other words, the plaintiff could receive no more than it could have received in a hypothetical liquidation in September 2008, when both GSEs went into statutory default.[15]

---

[15]   The plaintiff disputes this point, asserting that Section 4617(e) would limit its recovery only in circumstances, where FHFA, as the receiver, organized a "limited-life regulated entity" to assume the remaining assets of the GSEs.   The plaintiff misreads HERA; the statute's maximum liability provision expressly applies "regardless of the method which [FHFA] determines to utilize."   12 U.S.C. § 4617(e)(1).   Further, this provision expressly applies to "a

### D.        The Plaintiff Lacks Shareholder Standing To Sue for Injuries to the GSEs

In addition to HERA's statutory barriers to suit, the plaintiff lacks standing to bring a derivative claim under the shareholder standing rule to sue to redress an alleged injury to the value of its shareholdings.  *See Franchise Tax Bd. of Cal. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336 (1990) (the "shareholder standing rule … is a longstanding equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment"); *see also Potthoff v. Morin*, 245 F.3d 710, 716 (8th Cir. 2001).[16]

The plaintiff contends that there are "good reasons to conclude" that this longstanding rule should not be applied here.   Opp. 64 n.17.   But in doing so, it cites to a case that discussed a *different* standing rule, the "zone of interests" test for APA actions.   *See FAIC Sec. Inc. v. United States*, 768 F.2d 352, 357 (D.C. Cir. 1985).   The "zone of interests" test, however, is "an aspect of prudential standing distinct from third party standing."   *Am. Immigration Lawyers Ass'n v. Reno*,

---

regulated entity in default or in danger of default," 12 U.S.C. § 4617(e), a statutory term of art that includes the GSEs' entry into conservatorship, *see* 12 U.S.C. § 4502(8)(A) ("default" includes "any … official determination by … the Agency, pursuant to which a conservator … is appointed").   Thus, HERA fixes the maximum recovery of shareholders at the amount that they would have received if the GSEs had been liquidated in September 2008.   This makes eminent sense.   Congress did not intend for shareholders, who have contributed nothing since that time to restore the GSEs from the brink of insolvency, to gain a windfall from the federal taxpayers' massive commitment of funds to rescue those entities.   And because the plaintiff's potential recovery on its liquidation preference, if any, may be determined only in a liquidation proceeding, its claim for that recovery is not one that is ripe for review at this stage.

[16] This principle applies with special force here, given that the plaintiff is unable or unwilling to allege that it owned any shares in the GSEs at the time of the Third Amendment, in violation of the requirement in Fed. R. Civ. P. 23.1(b)(1) that a derivative complaint must "allege that the plaintiff was a shareholder or member at the time of the transaction complained of."   *See, e.g.*, *Kona Enters. v. Estate of Bishop*, 179 F.3d 767, 769 (9th Cir. 1999).

199 F.3d 1352, 1357 (D.C. Cir. 2000).   The shareholder standing rule is an aspect of third party

standing, not the zone of interests test.   *See Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 757

(7th Cir. 2008).   Thus, whether the plaintiff meets the "zone of interests" test is neither here nor

there, because it still runs afoul of the rule that prohibits it from raising third-party claims.

### III.   If This Action Is Not Dismissed, It Should Be Transferred or Stayed

If the Court denies the motion to dismiss, then it should apply either the "first-filed" rule or

28 U.S.C. § 1404(a) to transfer this action to the United States District Court for the District of

Columbia ("D.D.C.").   This Court may also choose to stay proceedings here pending a final

resolution of the proceedings in that court.

### A.   Transfer is Appropriate Under the First-Filed Rule

The first-filed rule should apply here "[t]o conserve judicial resources and avoid

conflicting rulings," if the motion to dismiss is denied.   *Nw. Airlines v. Am. Airlines*, 989 F.2d

1002, 1006 (8th Cir. 1993).[17]   The plaintiff protests that it is not a party in the D.D.C. actions.

Opp. 74.   This is a red herring.   The plaintiff neglects to mention that its corporate parent,

Berkeley Regional Insurance Company, is a plaintiff in D.D.C., where it is represented by the

same counsel as here, and where it has filed a virtually identical complaint challenging the Third

Amendment.   This satisfies the first-filed rule.   *See Maverick Tube, LP v. Westchester Surplus*

---

[17]   The plaintiff contends that this Court *must* decide jurisdiction before addressing a motion to transfer.   Opp. 75.   Treasury agrees that this Court *should* decide jurisdiction first, given the strength of the arguments that jurisdiction is lacking here.   But this Court is not required to do so.   *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (permitting *forum non conveniens* dismissal before jurisdiction is decided).   *But cf. Zavanna, LLC v. RoDa Drilling Co.*, 2009 WL 3720177, at *15 (D.N.D. 2009) (declining to apply *Sinochem* to motion to transfer).   In any event, if this Court were to deny the motion to dismiss, transfer would still be appropriate, given the extensive merits briefing that would then follow, which would be virtually entirely duplicative of the merits briefing in D.D.C.

24

*Lines, Inc.*, 2007 WL 5115436, at *2 (E.D. Mo. Aug. 6, 2007) (subsidiary and parent company

are "same parties" under first-filed rule).    The plaintiff also notes that it has raised some

additional arguments here that its corporate parent has not raised in D.D.C.    Opp. 74.    But the

two complaints need not be *identical* in order for the first-filed rule to apply.    Instead, the rule is

satisfied if two cases "have issues that substantially overlap," *Monsanto Tech. LLC v. Syngenta*

*Crop Protection, Inc.*, 212 F. Supp. 2d 1101, 1103 (E.D. Mo. 2002), which is the case here.

### B.    Transfer is Appropriate Under 28 U.S.C. § 1404(a)

Transfer under 28 U.S.C. § 1404(a) is also appropriate here, given the "very real possibility

of inconsistent results if plaintiff's claims are before two courts," *May Dep't Stores Co. v.*

*Wilansky*, 900 F. Supp. 1154, 1166 (E.D. Mo. 1995), a possibility that the plaintiff does not even

attempt to deny.    The plaintiff argues, again, that this Court must decide jurisdiction first.    Opp.

79.    Even if this were correct, *but see* note 17, *supra*, that would not counsel against transfer.    If

this Court were to reach the merits of the plaintiff's APA claims, it would review the same

administrative record that is already under consideration in the actions brought by the plaintiff's

corporate parent and others in D.D.C.    "There is no reason to have two courts reviewing the same

administrative record without extraordinary need or other distinguishing features, which are not

present here."    *Villa v. Salazar*, 933 F. Supp. 2d 50, 57 (D.D.C. 2013).

### Conclusion

For the foregoing reasons, the Court should dismiss the complaint for lack of jurisdiction.

If the motion to dismiss is denied, the court should transfer this action to the United States District

Court for the District of Columbia, or stay it.

25

Dated: September 29, 2014                    Respectfully submitted,

                                             JOYCE R. BRANDA
                                             Acting Assistant Attorney General

                                             NICHOLAS A. KLINEFELDT
                                             United States Attorney

                                             DIANE KELLEHER
                                             Assistant Branch Director

                                             /s/Joel McElvain
                                             JOEL MCELVAIN
                                             THOMAS D. ZIMPLEMAN
                                             Trial Attorneys
                                             U.S. Department of Justice
                                             Civil Division, Federal Programs Branch
                                             P.O. Box 883
                                             Washington, D.C. 20044
                                             (202) 514-2298
                                             Joel.McElvain@usdoj.gov

                                             *Counsel for Department of the Treasury*

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2014, a copy of the foregoing document was filed electronically.   Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.   Parties may access this filing through the Court's system.

Charles J. Cooper
Vincent J. Colatriano
Peter A. Patterson
David H. Thompson
Cooper & Kirk PLLC
1523 New Hampshire Avenue, NW
Washington, DC 20036

Matt M. Dummermuth
Kendra Lou Mills Arnold
Matthew Whitaker
Whitaker Hagenow & Gustoff LLP
305 Second Avenue, S.E., Suite 202
Cedar Rapids, IA 52401

*Counsel for Plaintiff*

Matthew C McDermott
Stephen H. Locher
Belin McCormick, P.C.
666 Walnut Street, Suite 2000
Des Moines, IA 50309

Howard N. Cayne
Asim Varma
David B. Bergman
Arnold & Porter LLP
555 12th Street, NW
Washington, DC 20004

*Counsel for Defendants Federal Housing Finance Agency and Melvin L. Watt*

/s/ Joel McElvain
JOEL McELVAIN

27